**BESTWAY CONCRETE and TIG Insurance Company, Petitioners,**

v.

**The INDUSTRIAL CLAIM APPEALS OFFICE OF the STATE OF COLORADO and Johnnie S. Ramirez, Respondents.**

No. 98CA1243.

Colorado Court of Appeals, Div. II.

July 8, 1999.

Clifton, Hook & Bovarnick, P.C., Richard A. Bovarnick, Harvey D. Flewelling, Denver, Colorado, for Petitioners.

No Appearance for Respondent The Industrial Claims Appeals Office.

Jean E. Dubofsky, P.C., Jean E. Dubofsky, Boulder, Colorado; Law Offices of Esteban A. Salazar P.C., Esteban A. Salazar, Greeley, Colorado, for Respondent Johnnie S. Ramirez.

Opinion by Judge CRISWELL.

In this workers' compensation proceeding, Bestway Concrete and its insurer, TIG Insurance Company, (collectively employer) seek review of the final order of the Industrial Claim Appeals Office (Panel) awarding temporary total disability (TTD) and medical benefits to Johnnie S. Ramirez (claimant). We affirm.

Claimant, a cement truck driver, sustained a compensable injury to his back on April 12, 1996. Employer referred claimant for medical treatment to a doctor of osteopathy (D.O.). The D.O. released claimant to return to work with no restrictions, effective May 6, 1996.

Claimant returned to work as directed. However, at the end of the day, employer terminated claimant for driving his truck in an unsafe manner and for "popping the clutch."

After his termination, claimant received medical treatment from other providers, including an orthopedic surgeon, and he did not return to the D.O. until August 5, 1997. At that time, the D.O. stated that he thought claimant had reached maximum medical improvement (MMI), but he could not determine the date that such occurred because of the time that had elapsed since he had last examined claimant and because he had no medical records from that intervening period.

Claimant thereafter requested a hearing seeking ongoing TTD benefits, beginning April 15, 1996, and medical benefits for his later treatment. After an evidentiary hearing, the Administrative Law Judge (ALJ) determined that the surgeon was an authorized treating physician and ordered payment of those fees.

The ALJ also found that claimant had not reached MMI, that he required additional medical testing as recommended by his treating physicians, and that, pursuant to medical evidence in conflict with the D.O.'s opinion, claimant did not have the ability to work when the May 6, 1996, release was given. Finally, the ALJ held that employer had failed to prove that claimant had willfully violated a safety rule.

Based upon his findings, the ALJ entered an award for medical benefits and for TTD benefits beginning April 15, 1996, and ongoing until terminated pursuant to rule or statute.

On review of that order, the Panel rejected employer's assertion that the D.O.'s release to work automatically terminated claimant's right to TTD benefits. It concluded that, because claimant had received treatment from multiple authorized treating physicians who held conflicting opinions concerning his ability to perform his regular employment, the ALJ had properly resolved the conflicting medical opinions in favor of claimant.

Critical to the Panel's order was its determination upholding the ALJ's finding that the surgeon was an authorized treating physician. The Panel concluded that this physician's medical reports could be construed as a retroactive opinion that claimant was not medically capable of returning to work on the date of the release. The Panel further held that the ALJ could reasonably infer that a chiropractor already treating claimant at the time of his injury was also an authorized treating physician at the time of the D.O.'s release to work. The Panel noted that no dispute existed that the chiropractor had not released claimant to work at that time.

Similarly, the Panel rejected employer's contention that claimant's return to work also precluded his recovery of TTD benefits. The Panel concluded that the ALJ had implicitly found that claimant was not at fault for his discharge and noted that the record contained substantial evidence supporting a causal connection between claimant's injury and his unemployment after his discharge. However, the Panel did set aside that portion of the ALJ's award that awarded benefits for the day that claimant worked.

Finally, the Panel determined that the ALJ's findings were insufficient to resolve the question whether claimant had reached MMI on August 5, 1997. Hence, it remanded the cause to the ALJ only for the ALJ's determination of that issue, and it noted that the findings upon this issue would determine claimant's right to TTD benefits after August 5, 1997. Accordingly, the Panel modified the award of TTD benefits to cover only the period from April 15, 1996, to August 5, 1997, with a reduction for one day's benefits.

I.

■ Because of the Panel's order of remand in this cause, the parties were requested by us to submit supplemental briefs on the question whether that order meant that its order with respect to the award of TTD benefits was not appealable. Both parties assert, and we agree, that the contested order is one that is final for purposes of appeal to this court and that the Panel's order of remand did not affect its finality for this purpose.

Section 8–43–301, C.R.S.1998, provides that any "order which requires any party to pay ... benefits" may be reviewed by the Panel upon the petition of a dissatisfied party. Section 8–43–307, C.R.S.1998, then provides that a "final order" of the Panel may be reviewed by this court upon a petition filed by any party in interest.

■ Previous statutes allowed a review by this court only of orders that allowed or denied a "claim." *See* Colo. Sess. Laws 1923, ch. 203 at 755. Now, however, the procedures authorized by the present statute, which are complete and definitive within themselves, *see Zappas v. Industrial Commission*, 36 Colo.App. 319, 543 P.2d 101 (1975), make a Panel's order that requires a party to "pay benefits" a "final order" for purposes of judicial review; it is not necessary that all aspects of a "claim" be ruled upon.

■ Of course, such an order must be one that finally disposes of the issue presented. Hence, an order remanding the cause to the ALJ for further findings is not "final." *Natkin & Co. v. Eubanks*, 775 P.2d 88 (Colo.App. 1989). However, so long as the order requires the payment of a benefit, the fact that it does not dispose of all issues raised does not mean that the order is not final. *See American Express v. Industrial Commission*, 712 P.2d 1132 (Colo.App.1985) (order directing medical expenses to be paid final, although issues remained with respect to TTD and permanent disability).

Here, the Panel's order finally and conclusively directed that employer pay TTD benefits to claimant for the period from April 15, 1996, to August 5, 1997 (excluding one day). Its order of remand had no effect upon claimant's entitlement to *these* benefits. The remand was only to require the ALJ to determine whether claimant would be entitled to continuing benefits after the latter date, and no decision pursuant to the remand order could deprive claimant of the benefits for the period already approved by the Panel.

Under these circumstances, we conclude that the order we are asked to review is one that directed employer to pay benefits, and

that order is, therefore, a final order for purposes of that review.

## II.

■ Employer initially contends that the record does not support the ALJ's finding that the orthopedic surgeon was an authorized treating physician. We disagree.

■ Employers are liable for the expenses incurred when, as part of the normal progression of authorized treatment for a compensable injury suffered by a claimant, an authorized treating physician refers a claimant to one or more other physicians. *Greager v. Industrial Commission*, 701 P.2d 168 (Colo.App.1985). Thus, the designation "authorized treating physician" includes not only those physicians to whom an employer directly refers a claimant, but also those to whom a claimant is referred by an authorized treating physician. *See Mason Jar Restaurant v. Industrial Claim Appeals Office*, 862 P.2d 1026 (Colo.App.1993).

■ Employer argues that the Panel here erroneously relied upon claimant's hearsay testimony to uphold the finding by the ALJ that the D.O. made a referral to the surgeon. We are not persuaded. Hearsay, if reliable, may support the finding of an administrative agency. *Industrial Claims Appeals Office v. Flower Stop Marketing Corp.*, 782 P.2d 13 (Colo.1989).

Further, the record also contains a supplemental physician's report signed and dated by the D.O. on August 5, 1997, in which he specifically made a referral to the surgeon.

Hence, the record evidence supports the Panel's finding in this respect, and we are, therefore, bound to uphold that determination. *See Sears v. Penrose Hospital*, 942 P.2d 1345 (Colo.App.1997).

## III.

Employer next contends that the ALJ erred by failing to find that the D.O.'s written work release terminated claimant's right to TTD benefits. We disagree.

Section 8–42–105(3), C.R.S.1998, provides that a claimant's entitlement to TTD benefits will terminate upon the occurrence of any

one of the four events set forth in the statute, *i.e.:* (a) the employee reaches MMI; (b) the employee actually returns to regular or modified employment; (c) "[t]he attending physician gives the employee a written release to return" to regular employment; or (d) the employee is released to return to modified employment and the employer makes a written offer for such, but the employee fails to begin such employment.

The phrase "attending physician", as used in § 8–42–105(3)(c), C.R.S.1998, means a physician within the chain of authorization who assumes care of the claimant. *Popke v. Industrial Claim Appeals Office,* 944 P.2d 677 (Colo.App.1997).

The statute provides that the opinion of the attending physician carries conclusive effect with respect to a claimant's ability to perform regular employment. However, one attending physician's release to work is not conclusive of the issue if multiple attending physicians render conflicting opinions. *Burns v. Robinson Dairy, Inc.,* 911 P.2d 661 (Colo.App.1995). And, a physician's status as an attending physician, when disputed, is a question of fact to be resolved by the ALJ. *Popke v. Industrial Claim Appeals Office, supra.*

Employer argues that, even though the surgeon may have become an authorized treating physician, his opinion cannot override that of the D.O. because he was not authorized until long after the D.O. released claimant to work. Essentially, employer seeks to have a temporal limitation imposed upon the definition of "attending physician" to the end that conflicting opinions by multiple physicians can result only if those multiple physicians were all contemporaneously attending physicians. Under employer's analysis, § 8–42–105(3)(c) would not permit the continuation of TTD benefits if a claimant is released to work by the employer-selected physician at a time when that physician is the only treating physician. Evidence presented by a later attending physician that the claimant was not then capable of resuming his regular work would be insufficient to affect the prior release. We are not persuaded that § 8–42–105(3) incorporates such a restriction.

A court's primary task in construing a statute is to give effect to the intent of the General Assembly by looking first at the language of the statute. *Lymburn v. Symbios Logic,* 952 P.2d 831 (Colo.App.1997) Thus, when the plain language of the statute is clear and unambiguous, it should be applied as written. *Rios v. Mireles,* 937 P.2d 840 (Colo.App.1996). And, an interpretation that would cause an absurd result should be avoided. *City of Grand Junction v. Sisneros,* 957 P.2d 1026 (Colo.1998).

Here, as the Panel pointed out, the controversy involving whether claimant reached MMI may ultimately be determined under § 8–42–107(8)(b), C.R.S.1998, which provides a mechanism permitting the claimant to challenge the opinion of the initial treating physician as to that issue. The applicable procedure under § 8–42–107(8)(b) requires the appointment of an independent medical examiner (IME), a determination by the IME of the MMI question, and a hearing at which both the employer and the claimant may present evidence upon the issue. Further, by giving the IME's opinion binding effect unless it is overcome with clear and convincing evidence, the scheme set forth under § 8–42–107(8)(b) recognizes that a treating physician selected by one of the parties pursuant to § 8–43–404(5), C.R.S. 1998, may harbor bias or prejudice. *See Colorado AFL–CIO v. Donlon,* 914 P.2d 396 (Colo.App.1995).

In contrast, even though a determination by an employer-selected treating physician that the claimant is physically able to resume regular employment has the same legal effect of terminating TTD benefits as would that physician's determination that the claimant has reached MMI, the statute does not provide any means for the claimant to obtain a review of that determination.

In a case such as this, in which the employer or the employer-selected physician has authorized claimant's treatment by another physician, and those physicians disagree as to whether the employee was able to resume full-time employment at a specific date, we cannot impute to the General As-

sembly an intent to allow the first physician to trump the latter physician's opinion, simply because the second physician began treatment at a later time.

We conclude, rather, that, if there is a conflict between such physicians as to whether a claimant was able to return to regular or modified employment, the ALJ must resolve that conflict after an evidentiary hearing. *See* § 8–43–201, C.R.S.1998 (granting an ALJ original jurisdiction to hear and decide all matters arising under the Workers' Compensation Act).

■ Here, such a hearing was held, and the ALJ resolved conflicting medical evidence in favor of claimant. We agree with the Panel that, although the surgeon's opinion concerning claimant's capacity to work on May 6, 1996, was made retroactively, that fact bears upon its weight and does not, as contended by employer, render such opinion speculative as a matter of law. Because an ALJ's findings based upon conflicting evidence are conclusive on review, the Panel's order based upon such findings must be affirmed. *See Delta Drywall v. Industrial Claim Appeals Office,* 868 P.2d 1155 (Colo. App.1993).

Relying upon *Popke v. Industrial Claim Appeals Office, supra,* employer contends that this matter must be remanded for additional findings as to whether the D.O. was "the treating physician" at the time he released claimant to work. However, the record contains no indication that any dispute existed as to the D.O.'s status as an attending physician, and he was previously found to be such in an earlier proceeding for medical benefits. Further, the ALJ's findings concerning the surgeon and the evidence of his opinion that claimant was not capable of returning to work at the time of the release reflect an underlying conclusion that the surgeon had acted as an attending physician. Thus, a remand is unnecessary.

## IV.

■ Employer also contends that claimant's right to collect TTD benefits terminated under § 8–42–105(3)(b), C.R.S.1998, when he returned to work. Again, we disagree.

We note, first, that this is not a situation in which there is no dispute as to claimant's ability to return to work. Hence, we need not address employer's assertion that, once a sole treating physician authorizes a claimant's return to regular work, that decision remains effective even if the claimant leaves work again. Rather, because the ALJ found, with record support, that claimant was unable to return to work when he did, the sole question is whether his later unemployment was due to his previous injury.

■ If a claimant is terminated for fault, and a work-related injury contributes in some degree to the subsequent wage loss, the claimant remains eligible for TTD benefits pursuant to § 8–42–105, C.R.S.1998. *PDM Molding, Inc. v. Stanberg,* 898 P.2d 542 (Colo.1995).

Here, while the ALJ did not explicitly find that claimant's discharge was not for fault, he did credit claimant's testimony that he had "popped the clutch" because his back and legs hurt and were not strong enough to operate it. The ALJ also credited medical evidence from another physician that claimant could not work from May 6, 1996, until August 9, 1997, and that MRI's taken during that period showed abnormalities in claimant's back.

No other conclusion can be drawn from these findings except that claimant's discharge occurred, at least in part, because of his previous injury, and that the injury contributed to his later wage loss. Thus, we are satisfied that the ALJ's findings sufficiently indicated the basis of his order, *see Riddle v. Ampex Corp.,* 839 P.2d 489 (Colo.App.1992), and that no remand is necessary.

In light of the evidence in the record, therefore, we hold that the award of TTD benefits for the period after claimant's discharge must be upheld. *Lymburn v. Symbios Logic, supra.*

Our disposition of the above contentions makes it unnecessary for us to consider the other issues raised.

The order is affirmed.

Judge TAUBMAN, and Judge PIERCE,* concur.

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S.1998.